UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| ISAAC PORTERFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 21-2528-SHM-tmp |
| | ) | |
| SHELBY COUNTY CRIMINAL | ) | |
| JUSTICE CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER MODIFYING THE DOCKET;
PROCEEDING CONSOLIDATED AMENDED COMPLAINT'S (ECF NOS. 17 & 18)
(1) CLAIM OF EXCESSIVE FORCE AGAINST SUMMERVILLE IN HER INDIVIDUAL
CAPACITY, (2) CLAIM OF FAILURE TO PROTECT AGAINST JONES IN JONES'S
INDIVIDUAL CAPACITY, AND (3) CLAIM OF DEPRIVATION OF MEDICAL CARE
AGAINST SUMMERVILLE AND JONES IN THEIR INDIVIDUAL CAPACITIES;
DISMISSING ALL OTHER CLAIMS IN THE CONSOLIDATED AMENDED COMPLAINT
(ECF NOS. 17 & 18) WITH PREJUDICE;
DENYING LEAVE TO AMEND THE CLAIMS DISMISSED WITH PREJUDICE;
DIRECTING CLERK TO ISSUE PROCESS FOR SERVICE OF CONSOLIDATED
AMENDED COMPLAINT ON SUMMERVILLE;
DIRECTING PORTERFIELD TO CLARIFY IDENTITY OF DEFENDANT JONES; AND
ORDERING PORTERFIELD TO SUBMIT A NON-PRISONER *IN FORMA PAUPERIS*
AFFIDAVIT OR THE FULL AMOUNT OF THE CIVIL FILING FEE**

On August 16, 2021, Plaintiff Isaac Porterfield filed a *pro se* complaint under 42 U.S.C. §

1983. (ECF No. 1.) At the time Porterfield filed the complaint, he was a pretrial detainee,

incarcerated at the Shelby County Criminal Justice Center (the "SCCJC") in Memphis,

Tennessee.[1] Porterfield's amended claims are before the Court. (ECF Nos. 17 & 18.)

## I.    PROCEDURAL BACKGROUND

On October 1, 2021, the Court granted leave to proceed *in forma pauperis*. (ECF No. 9.)

On June 30, 2022, the Court dismissed the complaint (ECF No. 1) without prejudice for failure

---

[1] On December 8, 2022, Porterfield notified the Clerk of Court in writing that Porterfield
had been released from confinement. (ECF No. 20.)

to state a claim to relief, granted leave to amend, and denied Porterfield's pending motions (ECF Nos. 10 & 11).  (ECF No. 12 (the "21-2528 Screening Order").)  Porterfield's leave to amend expired on July 21, 2022.  (*Id.* at PageID 96.)

On July 29, 2022, the Court consolidated No. 21-2528 and No. 21-2529 because Porterfield's complaints in those cases "arise from the same, or substantially similar, set of facts and assert the same, or substantially similar, claims."  (*Isaac Porterfield v. Shelby County Jail, et al.*, No. 21-2529, ECF No. 14 at PageID 111.)

On August 11, 2022, Porterfield filed untimely amended claims in No. 21-2528.  (ECF No. 17.)

On September 6, 2022, Porterfield filed more amended claims in No. 21-2528 (ECF No. 18), in which the first seven (7) pages are a photocopy of the first seven (7) pages of Porterfield's August 29, 2022 amended claims in No. 21-2503 (ECF No. 13).  Porterfield's overlapping factual allegations, his legal claims, and the Defendants No. 21-2528, No. 21-2529, and No. 21-2503 show a pattern of successive filings about the same underlying facts.  Porterfield seems to believe that the more occasions on which he alleges his claims, the greater his likelihood of success.

Because of (1) Porterfield's *pro se* status, (2) the confusing procedural histories that his filing practices have created in No. 21-2528, No. 21-2529, and No. 21-2503, and (3) public policy favoring resolution of litigation, the Court considers and consolidates Porterfield's untimely amended claims in No. 21-2528 (ECF Nos. 17 and 18 (the "Consolidated Amended Complaint" or "CAC")) for purposes of screening under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq.* (the "PLRA").

The CAC is difficult to construe.  Porterfield: (1) offers a narrative of alleged unconstitutional conduct (ECF No. 17 at PageID 238-41); (2) attaches copies of inmate grievances and correspondence about his complaints to SCCJC personnel (*id.* at PageID 242-52 & 255-61); and (3) quotes what purports to be SCCJC procedural policy (*id.* at PageID 253-54).  The core

2

factual allegations of the CAC are that: (1) Porterfield was denied outside recreation from April 2020 through December 2021 (ECF No. 17 at PageID 238); (2) one of the Defendant Joneses failed to protect Porterfield during an incident in the showers at the SCCJC on an unspecified date (*id*. at PageID 238-39); (3) Summerville used excessive force on Porterfield on an unspecified date (*id*. at PageID 238-39); (4) Porterfield suffered harassment and endured unconstitutional conditions of confinement, including "food [that was] tampered with" (*id*. at PageID 240-41); and (5) Porterfield was denied the right to receive mail and was deprived of his right to privacy at the SCCJC (*id*.).

The CAC alleges claims of: (1) deprivation of recreation (ECF No. 17 at PageID 238); (2) excessive force (*id*. at PageID 238-39); (3) failure to protect (*id*.); (4) deprivation of medical care (*id*. at PageID 239); (5) unconstitutional segregated housing (*id*. at PageID 240-41); (6) harassment (*id*. at PageID 240-42); (7) unconstitutional conditions of confinement (*id*.); (8) violation of Porterfield's right to receive mail (*id*.); (9) violation of Porterfield's right to privacy (*id*.); (10) inadequate prison grievance process (ECF No. 18 at PageID 264-69); (11) false disciplinary reports (*id*. at PageID 268-69); (12) retaliation (*id*. at PageID 241); (13) denial of the right of access to the courts (*id*. at PageID 270); and (14) violation of the Shelby County Sheriff Office's (the "SCSO") procedural policies (*id*. at PageID 269).

The CAC's factual allegations arose during Porterfield's confinement at the SCCJC and are reasonably construed as alleging claims against the following persons allegedly employed by the SCCJC during the times relevant to Porterfield's claims: (1) Shelby County Sheriff Floyd Bonner; (2) SCCJC medical department employee Mr. Sander; (3) Dr. O. Webb; (4) Dr. Washington; (5) nurse Ms. Jones; (6) Ms. Christian; (7) Officer D. Climens; (8) Officer S. Jones; (9) Officer D. Jones; (10) Officer Perry; (11) Officer Wilhigt; (12) Lt. Roberson; (13) Officer Ms. Parker; (14) Officer Ms. Summerville; (15) Ms. Luellen; (16) Officer Perkins; (17) Officer Ms. Y. Henning; (18) Officer Ms. Cox; (19) Officer Burns; (20) Officer Rodgers; (21) Officer D.

Phillips; (22) Officer Bass; (23) Officer Davis; (24) Officer Cole; (25) Officer Gray; (26) Officer Bradfield; (27) Officer Turner; (28) Officer Roberson; (29) Officer Baker; (30) Sergeant Mathews; (31) Officer J. Gibson; (32) Sergeant Mobly; (33) Officer Bufford; (34) Officer Ms. Martin; (35) Officer Ms. Porter; (36) Lieutenant Ms. Bennet; (37) Officer Cleaves; (38) Captain Mays; (39) Officer M. Green; (40) Chief Ms. Bernett; (41) SCCJC Maintenance Crew; (42) Ms. Woods; (43) Grievance Officer Fleming; (44) Lieutenant Peppers; and (45) "all [G]rievance [D]epartment staff" (collectively, the "Individual Defendants"). (*See* ECF No. 1 at PageID 1-2 & 5; ECF No. 18 at PageID 264-69; ECF No. 18-1 at PageID 277-86.) The CAC offers no plausible basis to infer that Porterfield has amended the named Defendants sued in the initial complaint. (*See* ECF Nos. 17 & 18.)

The Clerk shall modify the docket to add Shelby County, Tennessee as a Defendant.

For the reasons explained below, (1) the CAC's claims of (a) excessive force against Summerville in her individual capacity, (b) failure to protect against Jones in Jones's[2] individual capacity, and (c) deprivation of medical care against Summerville and Jones in their individual capacities SHALL PROCEED; (2) all other claims in the CAC are DISMISSED WITH PREJUDICE for failure to state a claim to relief; (3) leave to amend the CAC's claims that are dismissed with prejudice is DENIED; (4) the Clerk is DIRECTED to issue process for Summerville and to deliver that process to the United States Marshal Service for service, as outlined below; and (5) Porterfield is DIRECTED to file written clarification, within fourteen (14) days of the entry of this Order, stating whether Porterfield asserts his failure-to-protect claim and deprivation of medical care claim against Officer S. Jones or Officer D. Jones.

---

[2] It is unclear from the complaint and the CAC whether Porterfield asserts his failure-to-protect claim and deprivation of medical care claim against Officer S. Jones or Officer D. Jones. (*See* ECF No. 1 at PageID 2; ECF No. 17 at PageID 238-40.)

## II.     SCREENING OF THE CONSOLIDATED AMENDED COMPLAINT[3]

### A.     Claims Against Shelby County Tennessee And Against The Individual Defendants Who Are Employed By Shelby County

To the extent Porterfield sues the SCCJC, which is not a "person" subject to suit under § 1983, claims against the SCCJC are construed as claims against Shelby County. *See Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000). To the extent Porterfield sues employees of the SCCJC in their official capacities, those claims are construed as claims against Shelby County. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

Shelby County may be held liable only if Porterfield's injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)). Porterfield does not allege that he has been deprived of a right because of a policy or custom of Shelby County. Porterfield seeks relief based on alleged incidents unique to Porterfield's

---

[3] The legal standard for screening complaints under the PLRA and the requirements to state a claim under § 1983 are set forth in the 21-2528 Screening Order and are not restated here. (No. 21-2528, ECF No. 12.)

5

experiences during his confinement at the SCCJC. Porterfield does not allege facts demonstrating an official policy or custom of Shelby County that has injured him.

Porterfield does not state a claim to relief against Shelby County or against any of the Individual Defendants in their official capacities, and those claims in the CAC are DISMISSED WITH PREJUDICE.

### B.  Claim Of Deprivation Of Recreation

Porterfield alleges he "was not given outside rec[reation]" from April 2020 through December 2020 and during December 2021. (ECF No. 17 at PageID 238; *see also id*. at PageID 241 (alleging deprivation of recreation on May 19, 2021, May 25, 2021, and June 1, 2021).) Porterfield alleges he has "every right to receive 5 hours rec. a week," but he cites no support for that allegation. (*Id*. at PageID 241.) The Court construes Porterfield's allegation as a claim of unconstitutional punishment.

For pretrial detainees, the Fourteenth Amendment's due process clause precludes "punish[ment] prior to an adjudication of guilt." *Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994) (quoting *Bell v. Wolfish*, 441 U.S. 520 535 (1979)). The Supreme Court explained in *Bell* that, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. If a restriction or condition is not reasonably related to a legitimate goal — if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Bell*, 441 U.S. at 539 (internal citations omitted). A pretrial detainee can demonstrate that he was subjected to unconstitutional punishment by showing: (1) "an expressed intent to punish on the part of the detention facility officials," or (2) that "a restriction or condition is not rationally related to a legitimate government objective or is excessive in relation to that purpose." *J.H. v. Williamson*

*Cnty.*, 951 F.3d 709, 717 (6th Cir. 2020) (citing *Bell*, 441 U.S. at 535 and *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2105)).

The Sixth Circuit has recognized that prisoners are entitled to outdoor recreation sufficient to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). "[N]o applicable precedent require[es] any minimum amount of outdoor recreation for prisoners." *Kizer v. Robertson Cnty.*, No. 3:17-cv-00715, 2018 WL 2164557, at *1 (M.D. Tenn. May 10, 2018) (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)). The Sixth Circuit has held that only "a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)).

Porterfield does not allege sufficient facts about the alleged deprivation of recreation. For example, Porterfield alleges that Luellen denied Porterfield recreation on May 19, 2021 and May 25, 2021 in retaliation for Porterfield's grievance about Luellen's alleged assault on Porterfield on an unspecified date (ECF No. 17 at PageID 241). The CAC does not allege the amount of recreation to which Porterfield would have been entitled on those two days if the alleged deprivation of recreation had not been imposed. There are insufficient factual allegations in the CAC from which to plausibly infer that the alleged deprivation of recreation from April 2020 through December 2020, during December 2021, on May 19, 2021, and on May 25, 2021: (1) was intended to punish Porterfield; (2) was not rationally related to a legitimate government objective; or (3) was excessive in relation to that purpose. The CAC does not quantify the amount of recreation to which Porterfield would have been entitled on the specified dates, if the deprivation had not occurred. The CAC does not identify the persons who imposed the alleged deprivation from April 2020 through December 2020 and during December 2021, or their reasons for doing so. Porterfield does not allege that the alleged deprivation of recreation was "a total or near-total

deprivation of exercise or recreational opportunity." *See Rodgers*, 43 F.3d at 1086.  The CAC fails to allege sufficient facts demonstrating a claim of unconstitutional punishment from deprivation of recreation.

To the extent Porterfield alleges he was deprived of recreation before July 12, 2020 (*see* ECF No. 17 at PageID 238 (complaint signed by Porterfield on July 12, 2021)), his claim is barred by the one-year statute of limitations for § 1983 claims in Tennessee.  Tenn. Code Ann. § 28-3-104(a)(1)(B); *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634-35 (6th Cir. 2007); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005).

Porterfield's claim of deprivation of recreation is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### C.  Claim Of Excessive Force Against Summerville In Her Individual Capacity

Porterfield alleges that Summerville locked Porterfield in the shower on an unspecified date[4] because Porterfield had filed a grievance about Summerville.  (ECF No. 17 at PageID 238 (alleging Summerville "was telling me the whole time going to the shower 'I got her into some [trouble] … that I should not have wrote [sic] her up, I should have tried to work something out'").)  Before Summerville allowed Porterfield to shower, Summerville allegedly told Jones that Summerville would "jump on" Porterfield after the shower.  (*Id*.)  When Porterfield finished his shower, Summerville "jumped up and wrapped her arm around [Porterfield's] neck very tight[ly] and began to choke [Porterfield] to w[h]ere it cause[d] [Porterfield] to bend over."  (*Id*.)  When Porterfield asked Summerville to release her grip around his neck, Summerville tightened her grip.  (*Id*. at PageID 238-29.)   When Porterfield told Summerville she was causing him pain,

---

[4]  Porterfield's allegations in the CAC about Summerville's use of force in the shower are construed as arising in 2021, like the majority of Porterfield's other claims in the CAC.  (*See* ECF Nos. 17 & 18.)  To the extent Summerville's alleged use of force occurred before July 12, 2020, Porterfield's claim of excessive force against Summerville in her individual capacity is barred by the one-year statute of limitations for § 1983 claims in Tennessee.  Tenn. Code Ann. § 28-3-104(a)(1)(B); *Edison*, 510 F.3d at 634-35; *Roberson*, 399 F.3d at 794.

Summerville said "she didn't care." (*Id*. at PageID 239.) With Porterfield still in a headlock, Summerville twisted her body back and forth "to cause more pain." (*Id*.) Porterfield screamed out in pain. (*Id*. (the allegations collectively referred to as the "Shower Incident").)

Porterfield denies (1) having resisted any commands, (2) having posed any threats to anyone during the Shower Incident, and (3) having violated security alerts at the SCCJC during the Shower Incident. (*Id*.) When Summerville released her grip on Porterfield, he asked to be taken to the SCCJC's medical office for care of: (1) "blood running down [Porterfield's] neck from w[h]ere the keys in [Summerville's] hands cut [Porterfield's] neck; (2) a small scratch on Porterfield's face; and (3) neck pain. (*Id*.) Summerville and Jones allegedly told Porterfield that he had to chose between medical attention or recreation. (*Id*.) Summerville and Jones exited the area, and Porterfield called his family to tell them what had happened. (*Id*.)

The Fourteenth Amendment's Due Process Clause protects those in state custody from the use of excessive force that amounts to punishment. *Leary v. Livingston Cnty.,* 528 F.3d 438, 443 (6th Cir. 2008) (quoting *Graham v. Connor,* 490 U.S. 386, 395 n. 10 (1989)). "[W]hen assessing pretrial detainees' excessive force claims [the Court] must inquire into whether the plaintiff shows 'that the force purposely or knowingly used against him was objectively unreasonable.'" *Santos v. Lane,* No. 3:22-cv-0231, 2022 WL 1462964, at *1 (M.D. Tenn. May 9, 2022) (quoting *Kingsley*, 576 U.S. at 397-98). The inquiry about objective unreasonableness "account[s] for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Kingsley*, 576 U.S. at 397 (quoting *Bell*, 441 U.S. at 540). The Fourteenth Amendment's objective reasonableness inquiry turns on the facts and circumstances of each particular case. *Kingsley*, 576 U.S. at 397. Courts assess the reasonableness of a use of force from "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20

vision of hindsight." *Id.* (citing *Graham*, 490 U.S. at 396). Courts consider several factors under the objective reasonableness inquiry, including:

> the relationship between the need for use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer and whether the plaintiff was actively resisting.

*Id.* Courts are to ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

The CAC alleges sufficient facts to establish that Summerville's use of force during the Shower Incident was objectively unreasonable. The CAC's allegations, which the Court accepts as true for purposes of screening under the PLRA, alleges: (1) Porterfield posed no threat to himself or others during the Shower Incident; (2) the SCCJC was not under a safety or security alert during the Shower Incident; (3) Porterfield did not resist verbal commands during the Shower Incident; (4) Porterfield asked Summerville several times to release her grip during the Shower Incident; (5) Porterfield suffered physical injury from Summerville's alleged use of force during the Shower Incident; and (6) Summerville used force on Porterfield during the Shower Incident because Summerville was upset that Porterfield had filed a grievance about her. The CAC alleges sufficient facts from which to plausibly infer either that (1) Summerville's force during the Shower Incident was not a good-faith effort to maintain order or (2) Summerville used the alleged force maliciously or sadistically to cause harm. *See Cordell*, 759 F.3d at 580; *see also* ECF No. 17 at PageID 239 (alleging "I told her she was hurting me and she said she didn't care [because] I was gone [sic] hurt her with the [grievance report]").

Porterfield's claim of excessive force against Summerville in her individual capacity SHALL PROCEED.

### D. <u>Claim Of Failure To Protect Against Jones In His Individual Capacity</u>

Porterfield called out for Jones to remove Summerville from Porterfield during the Shower Incident, but Jones "did nothing to stop the assault from happening." (ECF No. 17 at PageID 239.) Jones allegedly told Porterfield: "I'm not the pod officer, and on top of that I'm not going against no officer for no inmate." (*Id.*) Porterfield alleges that "the whole time Jones just stood there in the doorway to the pod and didn't do anything to stop [Summerville] from assaulting me." (*Id.*) The Court construes Porterfield's allegations as a claim of failure to protect.

Pretrial detainees may sue jail officials for failing to prevent harm under the Fourteenth Amendment's objective standard. *See Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 728 (6th Cir. 2022). To state a failure-to-protect claim, a pretrial detainee must allege that an official acted in a manner that: (1) was intentional; (2) put the plaintiff at substantial risk of serious harm; (3) failed to take reasonable steps to abate that risk; and (4) actually caused the plaintiff's injuries. *Id.* at 729–30. "[The Sixth] Circuit has now explicitly taken the position that a failure-to-protect claim by a pretrial detainee requires only an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly." *Id.* (citing *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 596 (6th Cir. 2021)). In the context of a failure-to-protect claim, a prison officer will not be held liable without a showing that he "should have been aware of the reasonable likelihood of a potential attack and intervened earlier." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003).

The CAC alleges sufficient facts demonstrating that Jones's failure to intervene in the Shower Incident placed Porterfield at a substantial risk of harm and actually caused Porterfield's injuries. (*See* ECF No. 17 at PageID 240.) Porterfield alleges he asked Jones to intervene in the Shower Incident to stop Summerville's use of force, but Jones refused. The CAC alleges Jones was present for the entire Shower Incident. (*Id.* (alleging "they [Summerville and Jones] both planned their actions against me … while I showered").) There are sufficient factual allegations

in the CAC from which to plausibly infer that Jones deliberately and recklessly failed to stop Summerville's use of force.

Porterfield's claim of failure to protect against Jones in Jones's individual capacity SHALL PROCEED.

### E.  **Claim Of Deprivation Of Medical Care**

Porterfield allegedly asked Summerville and Jones for medical care after the Shower Incident for: (1) "blood running down [Porterfield's] neck from w[h]ere the keys in [Summerville's] hands cut [Porterfield's] neck; (2) a small scratch on Porterfield's face; and (3) neck pain.  (ECF No. 17 at PageID 239.)  Summerville and Jones allegedly told Porterfield that he had to choose between medical attention or recreation, and they walked away from Porterfield. (*Id.*)  Porterfield alleges Summerville and Jones refused to escort him to the SCCJC's medical office because Porterfield had filed several grievances against officers of the SCCJC.  (*Id.*)

"The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point."  *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008)).  Like an Eighth Amendment claim, a Fourteenth Amendment claim of deliberate indifference has both an objective and a subjective component.  *Id.*  To satisfy the objective component, "the detainee must demonstrate the existence of a sufficiently serious medical need."  *Id.* (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)).  "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment.  *Blackmore v. Kalamazoo City*, 390 F.3d 890, 897 (6th Cir. 2004).  Superficial physical conditions, such as minor "cuts, bruising, and swelling" are not "serious medical needs" requiring medical treatment, for purposes of claims of

unconstitutional deprivation of medical care. *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013); *accord Lockett v. Suradini*, 526 F.3d 866, 876 (6th Cir. 2008); *Blackmore*, 390 F.3d at 898 (citing cases involving unobvious and minor injuries that did not support deprivation-of-medical-care claims, including minor cuts and bruises). "For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Winkler*, 893 F.3d at 891 (quoting *Spears*, 589 F.3d at 254). A defendant has a sufficiently culpable state of mind if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The "small scratch" on Porterfield's face and his vaguely-described "neck pain" from "being put in the headlock" (ECF No. 17 at PageID 239) are minor injuries for purposes of the objective component of a deprivation-of-medical-care claim. *See Burgess*, 735 F.3d at 476. Porterfield's alleged bleeding from his neck is a different matter. "[B]lood running down [Porterfield's] neck" (ECF No. 17 at PageID 239) plausibly suggests a possibly life-threatening situation that would, if not treated, result in further significant injury or unnecessary and wanton infliction of pain. *See Crowder v. Hamilton Cnty. Sheriff's Office*, No. 11-306, 2012 WL 1866514, at *3 (E.D. Tenn. May 22, 2012) ("[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious") (internal citation omitted). Porterfield's bloody neck, if not treated promptly, constitutes a medical need posing risk of death or permanent handicap. Porterfield's bloody neck satisfies the objective prong of his deprivation-of-medical-care claim against Summerville and Jones.

Porterfield alleges sufficient facts demonstrating that Summerville and Jones subjectively knew of, yet disregarded, Porterfield's need for medical care of his bloody neck after the Shower Incident. Porterfield allegedly told Summerville and Jones he needed medical attention, which they refused to provide because of Porterfield's history of grievances against SCCJC officers. (ECF No. 17 at PageID 239.) That factual allegation demonstrates Summerville and Jones had a

13

sufficiently culpable state of mind in denying medical care to Porterfield after the Shower Incident. Porterfield satisfies the subjective prong of his deprivation-of-medical-care claim against them.

Porterfield's claim of deprivation of medical care against Summerville and Jones in their individual capacities SHALL PROCEED.

### F.  Claim Of Unconstitutional Segregated Housing

Porterfield alleges he has been housed in administrative segregation for two (2) years "outside of policy."  (ECF No. 17 at PageID 240.)

A prisoner has no "inherent constitutional right to avoid … segregated housing."  *Hill v. Lappin*, 630 F.3d 468, 469 (6th Cir. 2010).  Mere placement in administrative segregation itself does not implicate protectible liberty interests under the Due Process Clause.  *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).  For segregation to be actionable, the Supreme Court has held that an inmate must show that his segregated confinement rose to the level of "atypical and significant hardship in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008) (holding that "to implicate a cognizable liberty interest in the prison setting, ... the discipline must be unusual and substantial 'in relation to the ordinary incidents of prison life'") (quoting *Sandin*, 515 U.S. at 484).  A plaintiff must demonstrate "restraint" that imposed an atypical and significant hardship.  *Id.* at 790–91.

The duration of an inmate's segregated confinement is relevant to, but not solely determinative of, whether his confinement imposes atypical and significant hardship on him.  *See Harden-Bey*, 524 F.3d at 795.  The Sixth Circuit also considers the following factors, in their totality, when determining whether an inmate's segregation implicates a liberty interest by imposing atypical and significant hardship on the inmate: (1) the reasons for an inmate's continued confinement in segregation; (2) the conditions of an inmate's confinement "'in relation to the ordinary incidents of prison life'"; and (3) the impact the confinement will have on the

14

inmate's sentence. *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (quoting *Sandin*, 515 U.S. at 472, 483); *see Jones v. Raye*, No. 12-6567, 2014 WL 10319865, at *1–*2 (6th Cir. June 3, 2014) (holding that the plaintiff-inmate's two-and-a-half-year confinement "may have been atypical," but was for "good reason" because he had assaulted corrections officers).

Porterfield acknowledges that he is confined in segregated housing for his protection. (ECF No. 17 at PageID 240 ("I'm housed on Max d[ue] to me being assaulted by DRT staff in 2018").) Porterfield's vague statement about "phone and mail restr[aints]" (*id.*) in segregated housing does not allege sufficient facts demonstrating unusual and substantial hardship in relation to the ordinary incidents of prison life. The CAC is reasonably construed to allege that Porterfield did have phone access while confined. (*See id.* at PageID 238.) Porterfield's generalization that his "mail was being returned to sender, trashed by first floor staff, as well as my outgoing mail was being trashed by Sgts and officers of first floor" (*id.* at PageID 241) does not demonstrate sufficiently particularized facts supporting atypical and significant hardship.

Porterfield's claim of unconstitutional segregated housing is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### G.  Claim Of Harassment

Porterfield alleges Sergeant Martin taunted Porterfield by opening the cell door, inviting Porterfield to eat outside the cell door, and telling Porterfield "to write it up, as you've been doing." (ECF No. 17 at PageID 241.)

It is well settled that verbal abuse or harassment at the hands of prison officials does not constitute a deprivation of constitutional rights. *See*, *e.g.*, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly unprofessional behavior" is insufficient to constitute cruel and unusual punishment); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment."); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (holding that an officer's "reprehensible" offering sexual favors to the plaintiff-inmate did "not rise to the level of a constitutional violation").  "Just as the Constitution 'does not mandate comfortable prisons,' *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), it does not mandate polite prison guards." *Wingo v. Tennessee Dep't of Corr*., No. 10-1259, 2011 WL 13186535, at *4 (W.D. Tenn. Aug. 5, 2011).

Porterfield's claim of harassment is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

## H.  Claim Of Unconstitutional Conditions Of Confinement

Porterfield alleges "5 officers and rockman [sic] listed as Defendants tampered with my food trays [on] February 9, 2020, March 27, 2020, October 14, 2020, December 6, 2020, December 10, 2020, March 10, 2021, May 4, 2021, September 1, 2021, and September 28, 2021."  (ECF No. 17 at PageID 240 (alleging "I was given COVID-19 by Officer Jones d[ue] to food tampering").) Porterfield alleges fellow innate Turner tampered with Porterfield's food on June 1, 2021, July 22, 2021, and March 16, 2021 "at the request of Sgt. Porter and Luellen."  (ECF No. 17 at PageID 240-41.)  Porterfield alleges unspecified persons tampered with his water on June 1, 2021, September 8, 2021, and August 18, 2021.  (*Id*. (alleging "maintenance staff came in the catwalk after being called by Sgts. Martin, Luellen, and Summerville to tamper with the drinking water inside the cell again").)  The CAC does not allege that Porterfield suffered a credible injury from the alleged food tampering and water tampering.

Porterfield's allegations are construed as a claim of unconstitutional conditions of confinement.  *See generally Wilson*, 501 U.S. 294.  Prison officials must provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care.  *See Rhodes*, 452 U.S. at 347.  "Extreme deprivations are required to make out a

16

conditions of confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, ... only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9 (internal quotations and citations omitted). "[C]onditions … must amount to a deprivation of 'life's necessities,' before a violation of the [E]ighth [A]mendment can be found." *Walker*, 771 F.2d at 925 (quoting *Rhodes*, 452 U.S. at 347). "Eighth Amendment claims based on prison conditions have both an objective component (denial of … 'the minimal civilized measure of life's necessities'), and a subjective component ('deliberate indifference')." *Berryman v. Johnson*, No. 88-1239 & 88-1280, 1991 WL 150808, at *9-10 (6th Cir. Aug. 6, 1991) (internal citations omitted); *see also Farmer*, 511 U.S. at 834.

The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 928. A prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

The subjective component requires that jail officials acted with the requisite intent -- *i.e.*, had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03 (plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). A prison official must subjectively know of an excessive risk of harm to an inmate's health or safety and disregard that risk. *Farmer*, 511 U.S. at 837.

To the extent Porterfield alleges "5 officers[5] and rockman [sic] listed as Defendants tampered with my food trays" (ECF No. 17 at PageID 240), Porterfield does not allege sufficient facts stating a claim to relief.  Porterfield does not identify the officers or the rockman, and his vague statement does not demonstrate a "rare and extreme situation where an inmate's life is in imminent or grave danger." *See Neal v. Woosley*, No. 4:20-cv-P167-JHM, 2020 WL 7327313, at *4 (W.D. Ky. Dec. 11, 2020).  Speculative assertions of food tampering are not sufficient to support a constitutional claim. *See Association of Cleveland Firefighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007); *Lopez v. Wigly*, No. 9:07-cv-308, 2008 WL 5158569, at *1 (E.D. Tex. Dec. 9, 2008) (concluding, where the plaintiff "thought people were 'putting things into his food' to harass him," the plaintiff's "claim of food tampering is purely speculative.  This Court and others have held that speculative assertions of food tampering are not sufficient to support a constitutional claim") (internal citations omitted).)

To the extent Porterfield alleges that Martin, Luellen, and Summerville instructed "maintenance staff" to "tamper with the water inside the cell" (ECF No. 17 at PageID 240-41), and that Porterfield was "given COVID-19 by Officer Jones d[ue] to food tampering" (*id.* at PageID 240), those allegations are "a frivolous claim in that the allegations are fantastic or delusional scenarios that are baseless." *See Gibson v. Bzurenda*, No. 18-0190, 2020 WL 8611152, at *11 (D. Nev. Aug. 28, 2020); *see also* https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/covid-19-frequently-asked-questions#:~:text=Viruses%20like%20norovirus%20and%20hepatitis,with%20transmission%20

---

[5]   Porterfield's allegation of food tampering by "5 officers listed as Defendants" insufficiently alleges personal involvement in alleged deprivation of constitutional rights because Porterfield sues twenty-seven (27) officer-Defendants in this case.  (ECF No. 1 at PageID 1-2.) *See Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983 because "each defendant's liability must be assessed individually based on his own actions").

of%20COVID%2D19 ("Currently there is no evidence of food, food containers, or food packaging being associated with transmission of COVID-19").

To the extent Porterfield alleges a claim under § 1983 against fellow innate Turner, Porterfield's claim fails as a matter of law. "A § 1983 plaintiff may not sue purely private parties." *Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir. 1999). "In order to be subject to suit under § 1983, [a] defendant's actions must be fairly attributable to the state." *Collyer v. Darling*, 98 F.3d 211, 231-32 (6th Cir. 1997). Porterfield does not allege facts demonstrating that fellow inmate Turner acted under color of state law and, for that reason, could be considered a state actor subject to liability under § 1983. Porterfield alleges no facts demonstrating that Turner exercised powers traditionally reserved to a state during the events alleged in the CAC. *See Jackson v. Metro Edison Co.*, 419 U.S. 345, 352 (1974).

To the extent Porterfield alleges unconstitutional conditions of confinement prior to July 12, 2020 (*see* ECF No. 17 at PageID 240), his claim is barred by the one-year statute of limitations for § 1983 claims in Tennessee. Tenn. Code Ann. § 28-3-104(a)(1)(B); *Edison*, 510 F.3d at 634-35; *Roberson*, 399 F.3d at 794.

Porterfield fails to allege sufficient facts demonstrating the objective and subjective components of a claim for unconstitutional conditions of confinement, and that claim is DISMISSED WITH PREJUDICE.

### I.  Claim Of Violation Of Porterfield's Right To Receive Mail

Porterfield alleges his "mail was being returned to sender, trashed by first floor staff, as well as my outgoing mail was being trashed by Sgts and officers of first floor." (ECF No. 17 at PageID 241.)

Prisoners enjoy a First Amendment right to send and receive mail. *Pell v. Procunier,* 417 U.S. 817, 822 (1974); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 129 (1977). An inmate's exercise of constitutional rights is necessarily limited, however, "both from

the fact of incarceration and from valid penological objectives -- including deterrence of crime, rehabilitation of prisoners, and institutional security." *Pell,* 417 U.S. at 822–23; *see also Jones,* 433 U.S. at 129. The United States Supreme Court has held that inmate mail may be opened, pursuant to a uniform and evenly applied policy, to guard against contraband coming into the prison. *Wolff v. McDonnell,* 418 U.S. 539, 574–77 (1974).

Porterfield's general allegation about his mail being "trashed" and "returned to sender" by unspecified SCCJC personnel does not "contain either direct or inferential factual allegations that are sufficient to sustain a recovery under some viable legal theory." *See Mayes v. Rodela*, No. 20-0057, 2021 WL 3439412, at *2 (M.D. Tenn. July 15, 2021).)

Personal involvement by each named defendant, or their encouragement or condoning of others, is an essential element in a § 1983 cause of action asserting a constitutional deprivation. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citations omitted). Porterfield's vague allegation about the trashing and returning of his mail by "Sgts and officers of the first floor" does not allege facts demonstrating personal involvement by any Defendant in this case.

Porterfield's claim of deprivation of his right to receive mail is DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief.

### J.  Claim Of Violation Of Porterfield's Right To Privacy

Porterfield alleges violation of his "right to privacy," but the CAC alleges no supporting facts.

Porterfield's allegation about his "right to privacy" is so vague and conclusory that it fails to support a claim on which relief can be granted. "Threadbare recitals of legal principles, supported only by conclusory statements, fail to meet the plausibility standard required to state a claim for relief." *See Chapman v. Thacker*, No. 3:11-0006, 2011 WL 2934888, at *4 (M.D. Tenn. June 13, 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

Porterfield's allegation about his "right to privacy" does not state a claim.  The right to privacy is not implicated where the government or a government actor is the named defendant. *See Seals v. Seals*, No. 14-2058, 2014 WL 3591950, at *1 (W.D. Tenn. Jan. 30, 2014).

Porterfield's claim of violation of his right to privacy is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### K.  Claim Of Inadequate Prison Grievance Process

Porterfield alleges that "nothing was done" after he grieved Luellen's alleged assault on Porterfield.  (ECF No. 17 at PageID 241.)  Porterfield alleges he has also filed grievances "to undo the unconstitutional conditions of confinement and seek relief on my behalf, but it's been refused to be given."  (*Id.* at PageID 242.)  Porterfield is dissatisfied that he "had to do a sitdown to have something done about … my pin to use the phone [that] wasn't working."  (*Id.*)  Porterfield also alleges a factual narrative that is difficult to construe about the many grievances he filed during his confinement at the SCCJC.  (ECF No. 18 at PageID 264-69.)  Porterfield's principal allegations seem to be that his grievances were (1) intentionally misrouted to cover-up wrongdoing by SCCJC personnel and (2) not processed.  (*Id.* at PageID 265-67.)  Porterfield's allegations are reasonably construed as a claim of inadequate prison grievance process.

"[T]here is no constitutionally protected due process right to unfettered access to prison grievance procedures."  *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).  Prisoners do not possess a constitutional right to a prison grievance procedure.  *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that the plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure").

Porterfield does not allege that the Defendants' conduct described in the CAC adversely affected Porterfield's "ability to bring his claim before any court."  *See Coleman v. Governor of*

*Michigan*, No. 09-1139, 413 F. App'x 866, 874-875 (6th Cir. 2011) (citation omitted). Porterfield's allegations that "nothing was done" about his grievances and that he did not receive the relief he sought do not state a claim to relief under § 1983. *See Walker*, 128 F. App'x at 445.

Porterfield's claim of inadequate grievance process fails to state a claim to relief and is DISMISSED WITH PREJUDICE.

### L. Claim Of False Disciplinary Charges

Porterfield alleges (1) Officer Cox submitted a false incident report against Porterfield and (2) Sergeant Jackson "admitted in her interoffice memo that my rec[reation] was t[aken] d[ue] to Officer Cox's false report." (ECF No. 18 at PageID 268.)[6]  Porterfield's allegations are construed as a claim of false disciplinary charges.  Porterfield's allegations are insufficient to state a claim to relief.

A prisoner does not have a due process right to be free of false disciplinary charges. *See Upshaw v. Jones*, No. 14-2534, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999)).  Although a prisoner has a due-process right to call witnesses on his behalf at a hearing, *Edwards v. Balisok*, 520 U.S. 641, 647 (1997), prisoners have no right not to be charged with or convicted of prison disciplinary offenses, *see Wolff*, 418 U.S. at 564-71.  For those reasons, Porterfield does not state a claim for relief about false disciplinary charges.

Porterfield's claim of false disciplinary charges is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### M. Claim Of Retaliation Against Luellen In Luellen's Individual Capacity

---

[6]  The nature of the false disciplinary charge that Porterfield alleges is not clear from the CAC or its attachment.  (*See* ECF No. 18-1 at PageID 271 (alleging a "false report filed [by] Cox"); *id.* at PageID 272 (August 10, 2022 memo to Porterfield from Sergeant Jackson that states, *inter alia*, "[y]ou were sanction[ed] for a minor infraction").

Porterfield alleges that Luellen: (1) denied recreation to Porterfield on May 19, 2021 and May 25, 2021; and (2) denied a shower to Porterfield on June 1, 2021, in retaliation for Porterfield's grievance about Luellen's alleged assault on him on an unspecified date.  (ECF No. 17 at PageID 241.)

The Court reviews Porterfield's retaliation claim under the First Amendment.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution").  A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims."  *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391.  Filing a prison grievance also is protected conduct.  *Hill*, 630 F.3d at 472.  A plaintiff "must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  "Temporal proximity can provide circumstantial evidence of retaliatory motive."  *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475-76); *see King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) ("temporal proximity between protected conduct and retaliatory acts" when close enough may "creat[e] an inference of retaliatory motive"); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (same).

Porterfield's allegations against Luellen do not state a causal connection that is sufficient

to support a claim of retaliation.  The CAC is silent about the dates of: (1) Luellen's alleged assault on Porterfield; and (2) Porterfield's filing of a grievance about Luellen. No allegations in the CAC afford a plausible inference of close temporal proximity between: (1) Porterfield's filing a grievance, on an unspecified date, about an alleged assault by Luellen; and (2) Luellen's denial of (a) recreation to Porterfield on May 19, 2021 and May 25, 2021 and (b) a shower to Porterfield on June 1, 2021.  Nothing in the record demonstrates a sufficiently close temporal proximity between (1) Porterfield's protected conduct of filing grievances and (2) Luellen's alleged adverse action of denial of recreation and showers to Porterfield from which to infer a retaliatory motive.

Porterfield's retaliation claim against Luellen in Luellen's individual capacity is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### N.  Claim Of Denial Of Right Of Access To The Courts

Porterfield alleges he is "being denied access to the court by the Jail.  I haven't been to court in over a year now."  (ECF No. 18 at PageID 270; ECF No. 18-1 at PageID 287.)

Prisoners retain a constitutional right of access to the courts, *see  Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)), which "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391.  Prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828.   To have standing to pursue a First Amendment claim for denial of access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' *i.e.*, that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394.

Porterfield does not allege that he was unable to pursue a nonfrivolous legal claim because of specifically-described conduct by one or more of the Defendants.  The CAC neither identifies claims for which Porterfield allegedly sought "access to the court" (ECF No. 18 at PageID 270)

24

nor demonstrates that such claims were nonfrivolous.  The CAC fails to state a First Amendment claim of denial of access to the courts.

To the extent Porterfield bases his claim of denial of right of access to the courts on his allegation that his attorney had not met with him at the SCCJC, Porterfield's allegation fails to state a claim as a matter of law.  (ECF No. 18 at PageID 270 (alleging "I call the attorney and so do the counselor[s] to request that he visit me, but he refuse[s] to do so").)  Porterfield's allegation is construed as a claim of ineffective assistance of counsel.  Ineffective assistance of counsel is not a cognizable claim under § 1983, which applies only to actions committed "under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Claims of ineffective assistance of counsel must be brought in a habeas petition under 28 U.S.C. § 2254, and not in an action under § 1983.  *See Taylor v. Miles*, No. 19-1257, 2020 WL 104682, at *1 (W.D. Tenn. Jan. 8, 2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)).

Porterfield's claim of violation of denial of the right of access to the courts is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### O.  Claim Of Violation Of SCCJC Procedural Guidelines

Porterfield alleges Woods, Fleming, Peppers and "all gri[evance] dep[artment] staff" should be terminated for violating provisions of the SCSO's Inmate/Detainee Grievance Process.  (ECF No. 18 at PageID 264-69; ECF No. 18-1 at PageID 277-86.)  Porterfield alleges that the SCCJC Grievance Department intentionally delayed processing Porterfield's grievances so that: (1) the grievances would be untimely under the SCSO's Inmate/Detainee Grievance Process; and (2) Cox's "abuse of power" would be "cover[ed] up."  (*Id*. at PageID 264-65 (alleging "Fleming picked up my gri[evance] within the 30 day timeline and stamped [it] on the 28th to cover up the [unspecified] incident").)  Porterfield also alleges delayed response by several Defendants to Porterfield's grievance about Cox, but Porterfield's allegations are difficult to construe.  (*Id*. at PageID 267-68.)

Even if the Defendants untimely processed Porterfield's grievances under the timeline set forth in SCSO's Inmate/Detainee Grievance Process, Porterfield does not state a claim of constitutional deprivation. An inmate's allegation that jail officials failed to follow a correctional facility's administrative policies does not by itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007). Mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause. *See Sandin*, 515 U.S. at 483–84; *Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 728–30 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995)). Forty-two U.S.C. § 1983 does not provide a remedy for violating state laws or regulations. *Lewellen v. Metro. Gov't*, 34 F.3d 345, 347 (6th Cir. 1994); *see also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (a violation of a prison regulation is not actionable under § 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)). Porterfield does not have a constitutional right to have SCCJC personnel follow the SCSO Inmate/Detainee Grievance Process.

Porterfield's claim of violation of the SCSO's Inmate/Detainee Grievance Process is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

## III.   AMENDMENT UNDER THE PLRA

The Court DENIES leave to amend the CAC's claims of (1) deprivation of recreation, (2) segregated confinement, (3) harassment, (4) unconstitutional conditions of confinement, (5) deprivation of the right to receive mail, (6) deprivation of the right to privacy, (7) inadequate prison grievance process, (8) false disciplinary charges, (9) retaliation, (10) denial of access to the courts, and (11) violation of the SCSO's Inmate/Detainee Grievance Process (collectively, the "Dismissed Claims") under 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1). The Sixth

Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013)). The Sixth Circuit counsels "liberality" in allowing amendment at the screening stage under the PLRA. *Lucas*, 785 F. App'x at 292.

In cases where it would not be possible for a plaintiff to amend his complaint to state a claim for relief, leave to amend should not be granted. *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001). The instant action is one such case.

Amendment of the Dismissed Claims would be futile. Porterfield does not have actionable claims even if he amends. Leave to amend the Dismissed Claims is DENIED.

## IV.   PORTERFIELD'S OBLIGATION TO SUBMIT A NON-PRISONER *IN FORMA PAUPERIS* AFFIDAVIT OR THE ENTIRE CIVIL FILING FEE

Under the PLRA, a prisoner bringing a civil action must pay the full filing fee. The PLRA provides the prisoner the opportunity to pay the fee in monthly installments. 28 U.S.C. § 1915(b).

On December 8, 2022, Porterfield notified the Clerk of Porterfield's release from confinement and provided an updated address. (ECF No. 20.)

At the time of Porterfield's release from confinement, the entire amount of Porterfield's obligation to pay the civil filing fee in Case No. 21-2528 remained outstanding because no portion of the fee had been paid from Porterfield's inmate trust account at the SCCJC. (*See* ECF No. 9 (assessing the $350 civil filing fee in accordance with the PLRA, to be paid from Porterfield's inmate trust account at the SCCJC).) Under these circumstances, the Sixth Circuit has held that "the obligation to pay the remainder of the fees is to be determined solely on the question of whether the released individual qualifies for pauper status." *McGore v. Wrigglesworth*, 114 F.3d 601, 613 (6th Cir. 1997), partially overruled on other grounds by *LaFountain*, 716 F.3d at 951;

*accord In re Prison Litig. Reform Act*, 105 F.3d 1131, 1139 (6th Cir. 1997) ("[A] prisoner is obligated to pay assessed fees and costs only while he or she remains incarcerated.  After release, the obligation to pay the remainder of the fees is to be determined solely on the question of whether the released individual qualifies for pauper status.  The decision of whether pauper status is available to a released prisoner will be made by the district court") (internal citation omitted). Porterfield must renew his pauper status or pay the four hundred and two dollar ($402) civil filing fee.

Porterfield is ORDERED to submit, within fourteen (14) days of the entry of this Order, either a properly completed and signed non-prisoner *in forma pauperis* affidavit or $402.00.[7]  The Clerk SHALL MAIL Porterfield a copy of the non-prisoner *in forma pauperis* affidavit form along with this Order.

Failure to comply with this Order in a timely manner will result in the dismissal of this action without further notice, pursuant to Fed. R. Civ. P. 41(b), for failure to prosecute.

## V.    CONCLUSION

For all of the reasons explained above:

A.    The CAC's claims of (1) excessive force against Summerville in her individual capacity, (2) failure to protect against Jones in Jones's individual capacity, and (c) deprivation of medical care against Summerville and Jones in their individual capacities SHALL PROCEED. (ECF No. 17 & 18);

---

[7]  The civil filing fee is $350. 28 U.S.C. § 1914(a).  Under § 1914(b) and the Schedule of Fees set out following the statute, an administrative fee of $52 for filing any civil case also is required.   (*See*  https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.)  Because the $52 administrative fee does not apply if leave to proceed *in forma pauperis* is granted, only the $350 fee was assessed in the Court's October 1, 2021 Order.  (ECF No. 9.)  If Porterfield does not renew his pauper status, he will be responsible for the entire $402 fee.

B.    The Dismissed Claims in the CAC (ECF No. 17 & 18) are DISMISSED WITH PREJUDICE for failure to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2).  Leave to amend the Dismissed Claims is DENIED;

C.    The Clerk is ORDERED to issue process for Summerville and to deliver that process to the U.S. Marshal for service.  Service shall be made on Summerville pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective.  All costs of service shall by advanced by the United States.  It is further ORDERED that Porterfield shall serve a copy of every subsequent document Porterfield files in this case on the attorneys for Summerville or on Summerville personally if Summerville is unrepresented.  Porterfield shall make a certificate of service on every document he files.  Porterfield shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[8]  Porterfield is reminded that he must promptly notify the Clerk, *in writing*, of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of the case without further notice;

D.    Porterfield is ORDERED to file written clarification, within fourteen (14) days of the entry of this Order, whether Porterfield asserts his claims of failure to protect and deprivation of medical care against (1) Officer S. Jones or (2) Officer D. Jones.  (*See* ECF No. 1 at PageID 2; ECF No. 17 at PageID 238-40.)  If Porterfield timely files that written clarification, the Court will review Porterfield's response as soon as reasonably practicable and will direct the Clerk to issue process, based on the Court's review of Porterfield's response.  If Porterfield does not file that written clarification within fourteen (14) days of the entry of this Order, the Court will dismiss

---

[8]  A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.

Porterfield's claims of failure to protect and deprivation of medical care against Officer S. Jones and Officer D. Jones; and

     E.     Porterfield is ORDERED to submit, within fourteen (14) days of the entry of this Order, either a properly completed and signed non-prisoner *in forma pauperis* affidavit or the $402.00 civil filing fee.

     SO ORDERED, this 15th day of August, 2024.

                   */s/ Samuel H. Mays, Jr.*
                   SAMUEL H. MAYS, JR.
                   UNITED STATES DISTRICT JUDGE